THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LINDSEY CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>OLSON ASSOCIATS P.C. d/b/a OLSON SHANER, RANDOPH CHIP SHANER JR., ROB KOLKMAN, CONTABLE KOLKMAN LLC, N.A.R., INC., and JOHN DOES 1-5,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [13] DEFENDANTS N.A.R., INC., OLSON ASSOCIATES, P.C., AND RANDOLPH CHIP SHANER'S MOTION TO DISMISS, GRANTING IN PART AND DENYING IN PART [14] CONSTABLE DEFENDANTS' MOTION TO DISMISS, DENYING [18] DEFENDANTS N.A.R., INC. OLSON ASSOCIATES, P.C., AND RANDOLPH CHIP SHANER'S MOTION TO CERTIFY ISSUE TO UTAH SUPREME COURT**<br><br>Case No. 2:23-cv-00914-DBB-DAO<br><br>District Judge David Barlow |

Before the court are two motions to dismiss filed by Defendants North American Recovery, Inc. ("NAR"), Olson Associates, P.C., and Randolph Chip Shaner (collectively "Law Firm Defendants")[1]; and Defendants Rob Kolkman and Constable Kolkman LLC (collectively "Constable Defendants").[2] In the alternative, NAR and the Law Firm Defendants seek to certify

---

[1] Defs. N.A.R., Inc., Olson Associates, P.C., and Randolph Chip Shaner's Rule 12(b)(6) Mot. to Dismiss Pl.'s Am. Compl. ("Defs.' Mot."), ECF No. 13.
[2] Constable Defendants' Mot. to Dismiss Pl.'s Am. Compl. ("Constable Defs.' Mot."), ECF No. 14 (incorporating by reference all of NAR's and the Law Firm Defendants' arguments).

1

an issue to the Utah Supreme Court.[3] For the following reasons, the court denies the motion to certify, and grants in part and denies in part Defendants' motions to dismiss.

## BACKGROUND

In 2018, Plaintiff Lindsey Campbell incurred an alleged debt with City Center Credit Union in order to purchase a vehicle.[4] The debt became past due and was eventually assigned to NAR.[5] NAR "assigned the alleged debt" to Olson Associates and its managing partner Mr. Shaner to collect on NAR's behalf.[6] The Law Firm Defendants commenced a lawsuit in state court on September 1, 2022, and obtained a default judgment on December 15 in favor of NAR in the amount of $9,775.25.[7] The court then issued the Law Firm Defendants a Writ of Execution on March 9, 2023 for $10,093.07.[8] The Law Firm Defendants next provided Constable Defendants with a copy of the Writ of Execution "and instructed, authorized, and required" them to collect the alleged debt.[9] The Amended Complaint alleges "[u]pon information and belief" that Mr. Shaner, acting on behalf of the Law Firm and NAR, personally supervised all of Constable Defendants' debt collection attempts.[10] The Constable Defendants "mailed collection letters to the Plaintiff, attempted to negotiate payment arrangements, and threatened" Ms. Campbell.[11]

---

[3] Defs. N.A.R., Inc., Olson Associates, P.C., and Randolph Chip Shaner's Second Alternative Mot. to Certify Issue of State Law to the Utah Supreme Court and to Stay ("Defs.' Mot. to Certify"), ECF No. 18.
[4] Am. Compl. ¶ 18, ECF No. 10.
[5] Id. ¶¶ 19–20.
[6] Id. ¶¶ 21, 8.
[7] Id. ¶ 22; see also Default Judgment, NAR Inc. v. Campbell, No. 229103482 (Utah Dist. Ct. Dec. 15, 2022).
[8] Am. Compl. ¶ 23; Writ of Execution, NAR Inc. v. Campbell, No. 229103482 (Utah Dist. Ct. Mar. 9, 2023).
[9] Am. Compl. ¶ 25.
[10] Id. ¶ 26; see also id. ¶¶ 29, 68–73.
[11] Id. ¶ 28.

Specifically, the Constable Defendants mailed a debt collection letter to Ms. Campbell on June 28, 2023, which represented that Ms. Campbell owed NAR $10,469.47—just under $400 more than was authorized by the Writ of Execution.[12] The letter threatened that if Ms. Campbell did not make arrangements to pay the debt, the Constable Defendants would sell her personal property in a foreclosure sale and would add additional sale and posting costs.[13] Constable Defendants mailed a similar letter on July 21.[14] However, this second letter also included a notice of sale, which "falsely stated" that a sale of Ms. Campbell's personal property was to occur on August 11.[15] The notice of sale also solicited payment of the debt in order to cancel the sale.[16] The purported August 11 sale never occurred and was never scheduled or advertised.[17]

Ms. Campbell spoke "with someone" at the Law Firm by telephone on September 7, 2023.[18] Ms. Campbell was informed that she must contact Constable Defendants about the debt, because NAR and the Law Firm had "hired [C]onstable Defendants as their surrogate debt collectors[.]"[19] Finally, the state court set aside the judgment on October 6, 2023, as Ms. Campbell had not been properly served.[20]

Ms. Campbell filed her Amended Complaint on February 20, 2024, alleging three claims: fraud, violation of the Fair Debt Collection Practices Act ("FDCPA"), and violation of rights secured by the Constitution and laws of the United States under 42 U.S.C. § 1983.[21] Defendants

---

[12] *Id.* ¶¶ 30–35.
[13] *Id.* ¶¶ 36–39.
[14] *Id.* ¶¶ 40–44.
[15] *Id.* ¶¶ 45–47.
[16] *Id.* ¶ 48.
[17] *Id.* ¶¶ 52, 54.
[18] *Id.* ¶ 63.
[19] *Id.* ¶ 65.
[20] Am. Compl. ¶ 24; Order Vacating Judgment, *NAR Inc. v. Campbell*, No. 229103482 (Utah Dist. Ct. Oct. 6, 2023).
[21] *See* Am. Compl. ¶¶ 166–240.

then filed their motions to dismiss, as well as a motion to certify.[22] These motions were fully briefed on May 22, 2024.[23] The court begins with the motion to certify.

## MOTION TO CERTIFY

### STANDARD

"Whether to certify a question of state law to the state supreme court is within the discretion of the federal court."[24] Utah Rule of Appellate Procedure 41 provides that "[t]he Utah Supreme Court may answer a question of Utah law certified to it by a [federal district court] when requested to do so . . . if the state of the law of Utah applicable to a proceeding before the certifying court is uncertain."[25] However, "[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law."[26] Indeed, federal courts should "not trouble our sister state courts every time an arguably unsettled question of state law" arises.[27] Instead, certification may be appropriate when the question sought to be certified "(1) may be determinative of the case at hand and (2) is sufficiently novel that [the court would] feel uncomfortable attempting to decide it without further guidance."[28]

---

[22] *See* Defs.' Mot.; Constable Defs.' Mot.; Defs.' Mot. to Certify.
[23] *See* Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 15; Pl.'s Mem. in Opp'n to Mot. to Dismiss, ECF No. 16 (incorporating by reference all arguments made in opposition to NAR and the Law Firm Defendants); Defs. N.A.R., Inc., Olson Associates, P.C., and Randolph Chip Shaner's Reply Mem. in Further Support of Mot. to Dismiss Pl.'s Am. Compl. ("Defs.' Reply"), ECF No. 17; Pl.'s Mem. in Opp'n to Mot. to Certify ("Pl.'s Opp'n to Mot. to Certify"), ECF No. 20; Reply Mem. in Further Support of Defs. N.A.R., Inc., Olson Associates, P.C., and Randolph Chip Shaner's Second Alternative Mot. to Certify Issue of State Law to the Utah Supreme Court and to Stay ("Defs.' Reply to Mot. to Certify"), ECF No. 22-1.
[24] *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)).
[25] Utah R. App. P. 41(a).
[26] *Armijo*, 843 F.2d at 407.
[27] *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).
[28] *Id.*

4

## DISCUSSION

Here, NAR and the Law Firm seek to certify the following question to the Utah Supreme Court:

> Whether a constable, who has been tasked with serving a writ of execution which commands him "to collect the judgment, with costs, interest, and fees, and to sell enough of Defendant(s) non-exempt personal property including but not limited to: cash, TV's [sic], stereos, electronic equipment, VCR's [sic], office equipment, cameras, works of art, collections, guns, camping equipment, furniture, livestock, machinery, farm equipment, tools and any and all vehicles to satisfy the same" is permitted under Utah law, to enter into payment plans and accept payments from judgment debtors.[29]

They argue that no Utah appellate case has decided this question, and the question is likely to recur in other cases.[30] Ms. Campbell opposes the motion and argues that there is no uncertainty with the question, that the issue is too fact specific to warrant certification, that certification would be a waste of time and resources, and that the proposed question would have no bearing on any of her claims.[31]

Contrary to Ms. Campbell's suggestion, the proposed question would impact the viability of at least one of her claims—the FDCPA claim. The FDCPA "prohibits a 'debt collector' from engaging in harassing conduct, using false or misleading representations, or using unfair or unconscionable means to collect a debt."[32] The definition of "debt collector" expressly excludes "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties."[33] As the court

---

[29] Defs.' Mot. to Certify 2.
[30] *Id.* at 2.
[31] Pl.'s Opp'n to Mot. to Certify 1–9.
[32] *Peretto v. Erickson*, No. 1:23-cv-00025, 2024 WL 555140, at *2 (D. Utah Feb. 12, 2024) (citing *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002)); *see also* 15 U.S.C. §§ 1692d, 1692e, 1692f.
[33] 15 U.S.C. § 1692a(6).

recognized in a prior decision, this exception may turn on whether a duly appointed constable was acting in accord with the authority conferred by the writ of execution at issue,[34] which in turn depends on how the court construes such a writ.

However, the court finds that there is not sufficient uncertainty about the question to justify certification to the Utah Supreme Court. The Utah Code provides that municipalities may authorize the appointment of constables, subject to certain procedures.[35] It authorizes constables to "execute, serve, and return all process directed or delivered to him by a judge of the justice court serving the city or county[.]"[36] And Rule 64E of the Utah Rules of Civil Procedure authorizes constables to serve and execute writs of execution, which permits the holder to seize property from another.[37] Likewise, Rule 69A and 69B govern the seizure and sale of property pursuant to a duly authorized writ.[38] Thus, the statutes governing constables in Utah clearly provide a limited scope of authority. No statutory authority states that a constable may "enter into payment plans and accept payments from judgment debtors," as the proposed question suggests. And indeed, NAR and the Law Firm do not point to any such authority.[39]

---

[34] *Peretto*, 2024 WL 555140, at *6.
[35] Utah Code § 17-25a-1.
[36] Utah Code § 17-25-1(1)(b).
[37] Utah R. Civ. P. 64E(a) ("A writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment or order requiring the delivery of property or the payment of money."); Utah R. Civ. P. 64(d)(1) ("If the writ directs the seizure of personal property, the court clerk may issue the writ to an officer of any county."); Utah R. Civ. P. 64(d)(3) (describing the process required for service of the writ); Utah R. Civ. P. 64(a)(7) (defining "officer" to include constables).
[38] Utah R. Civ. P. 69A; Utah R. Civ. P. 69B.
[39] Indeed, they expressly acknowledge otherwise, but argue that "[b]y the same token, however, the Utah statutes and Rules of Civil Procedure do not contain any language which prohibits constables from" engaging in such behavior. Defs.' Mot. 12. However, by expressly providing for certain tasks constables may perform and remaining silent as to any others, the statutes expressly constrain constables' authority to the enumerated list. *See NLRB v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017) (describing the negative implication canon).

6

At best, they suggest that the state court's command to "collect the judgment" falls within the catchall provision of Rule 64(d)(2): A writ "may direct the officer to seize the property, . . . to sell the property, or to take other specified actions."[40] But that catchall—which applies to multiple forms of writs—does not expand the scope of a writ of execution, which permits only the seizure of property under certain circumstances.[41] And in any event, the catchall is inapplicable to the order at issue in this case. The catchall refers to "other *specified* actions"; Defendants argue that by broadly conferring the authority to "collect a judgment," the state court impliedly granted them authority to collect the judgment by whatever means they desired.[42] In other words, Defendants suggest that because the order did *not* specify the means by which Constable Defendants could collect the judgment that their actions may fall within the catchall.[43] That argument lacks merit.

Here, the text of the Writ of Execution is unambiguous when read in light of the statutes and rules discussed previously. It commands the constable "to collect the judgment, . . . and to sell enough of Defendant(s) non-exempt personal property . . . to satisfy the same."[44] The order to "collect the judgment" must be read in light of what follows ("to sell") and rules governing such writs; it does not confer freestanding and unfettered authority to collect the judgment by any means the constable wishes. Here, the Writ does not authorize all of the acts complained of by Ms. Campbell.

---

[40] Utah R. Civ. P. 64(d)(2).
[41] Utah R. Civ. P. 64E(a).
[42] Defs.' Mot. 12–13.
[43] *Id.* ("[T]he Writ of Execution did not state that the *only way* the Constable Defendants could 'collect the judgment' is to seize and sell the judgment debtor's property. That is simply one available method of collecting the judgment." (emphasis added)).
[44] Writ of Execution, *NAR Inc. v. Campbell*, No. 229103482 (Utah Dist. Ct. Mar. 9, 2023).

In sum, the court does not find that the proposed question presents a sufficiently novel question such that it feels uncomfortable deciding the issue without guidance from the Utah Supreme Court. Instead, the question implicates straightforward matters of statutory interpretation, as well as interpretation of another court's orders. In both their motion and reply, the only substantive justifications raised by NAR and the Law Firm is that no Utah appellate court has ruled on a similar issue and the issue is likely to recur.[45] They do not argue that resolution of the question presents any great uncertainty. That is not sufficient. Accordingly, the court turns to the motions to dismiss.

## MOTIONS TO DISMISS

### STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[46] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[47] The court does not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[48]

In addition, under Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[49] Rule 9(b) applies to all claims

---

[45] *See* Defs.' Mot. to Certify 2; Reply to Mot. to Certify 2–4.
[46] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[47] *Id.*
[48] *Id.* at 678.
[49] Fed. R. Civ. P. 9(b).

that are "based on the same core allegations of deception, false misrepresentations, and fraudulent conduct."[50] To satisfy Rule 9(b)'s heightened pleading standard, among other things, a pleading must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[51] However, a pleading may state a claim under Rule 9(b) if some allegations are stated generally, but the allegations taken as a whole are sufficiently particularized.[52]

## DISCUSSION

### I. Fraud

The elements of fraud under Utah law are:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[53]

Ms. Campbell's fraud claim is premised on the Constable Defendants misrepresenting their legal authority to collect the alleged debt and making various threats, among other things.[54]

Defendants argue that the Amended Complaint does not allege reasonable reliance or damages.[55]

---

[50] *Sec. Sys., Inc. v. Alder Holdings, LLC*, 421 F.Supp.3d 1186, 1194 (D. Utah 2019); *see also Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) ("By its terms, Rule 9(b) applies to 'all averments of fraud.' This wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action.").
[51] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 12152 (10th Cir. 1997) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).
[52] *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1280 (10th Cir. 2023).
[53] *Fidelity Nat. Title Ins. Co. v. Worthington*, 2015 UT App 19, ¶ 10, 344 P.3d 156 (quoting *Webster v. JP Morgan Chase Bank, NA*, 2012 UT App 321, ¶ 16, 290 P.3d 930).; *accord Pace v. Parrish*, 247 P.2d 273, 274–75 (Utah 1952).
[54] Am. Compl. ¶¶ 190–217.
[55] Defs.' Mot. 6–7.

Setting aside the issue of damages, the Amended Complaint does not allege that Ms. Campbell reasonably relied on any representation of the Constable Defendants. Put another way, Ms. Campbell must allege that the Constable Defendants made a representation that was intended to induce her to act a specific way—presumably that she would pay the judgment—that she did in fact act that way, and in doing so, acted in reliance on the veracity of the representation. But the Amended Complaint does not allege any acts Ms. Campbell undertook that Defendants induced her to take, or that she relied on Defendants' representations in taking any such acts. Ms. Campbell makes three arguments to the contrary.

First, Ms. Campbell argues that "[t]he question of reasonable reliance is . . . a matter that cannot be resolved at the pleadings stage," because it is ultimately a jury question.[56] Not so. Under Federal Rule of Civil Procedure 8, as interpreted by the Supreme Court, a plaintiff must allege facts, accepted as true, that allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.[57] Put another way, Ms. Campbell must allege facts that are sufficient to make plausible each element of her claims, even if the veracity of those facts must eventually be tested by a jury.

Second, Ms. Campbell argues that she suffered a number of emotional responses to Defendants' alleged misrepresentations, and that such emotional responses satisfy the reasonable reliance element.[58] To support her view that this is sufficient, she cites *Campbell v. State Farm Mutual Auto Insurance Co.*[59] *Campbell* has nothing to say about the reasonable reliance element

---

[56] Pl.'s Opp'n 4.
[57] *Iqbal*, 556 U.S. at 679.
[58] Pl.'s Opp'n 4–5.
[59] 2001 UT 89, 65 P.3d 1134, *rev'd on other grounds*, 538 U.S. 408 (2003).

of fraud; instead, it holds that emotional distress damages may be recoverable in a fraud case.[60] As reflected above, damages and reasonable reliance are separate elements, both of which must be alleged in order to state a claim.

Finally, Ms. Campbell argues that hiring an attorney and communicating with Defendants satisfies the reasonable reliance element.[61] But the allegations of the Amended Complaint suggest that these acts were taken because Ms. Campbell did *not* in fact rely on the statements of Defendants, but rather, distrusted them.[62] Indeed, the Amended Complaint alleges that "she hired an attorney *to defend her from those threats and demands*[.]"[63] This allegation suggests that while Ms. Campbell believed that Defendants would take action, she did not believe they had any legal right to do so. Ms. Campbell does not point to any caselaw that suggests that incurring costs associated with disbelieving a particular statement is sufficient to establish the reasonable reliance element. On these alleged facts, hiring an attorney and communicating with Defendants in order to dispute the alleged debt are not sufficient to plausibly allege the reasonable reliance element. Again, Ms. Campbell was not induced to act a certain way—indeed, she did the opposite by hiring a lawyer to defend her—and therefore did not rely on any of Defendants' purported misrepresentations.

Accordingly, Ms. Campbell has not stated a claim for fraud.

---

[60] *Id.* at ¶¶ 105–06.
[61] Pl.'s Opp'n 6.
[62] *See* Dan B. Dobbs et al, Dobbs' Law of Torts § 671 (2d ed. Apr. 2024 Update) ("To rely, the plaintiff must enter a transaction in whole or in part because of the representation. For example, a plaintiff who enters into a transaction with the defendant does not reply upon the defendant's misrepresentation if she enters into the transaction without a belief in its truth[.]").
[63] Am. Compl. ¶ 160.

## II.   Section 1983

42 U.S.C. § 1983 reads: "Every person who, under color of [state law], subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]"[64] The parties dispute whether liability under Section 1983 requires state action.[65] At least when the constitutional violation at issue itself involves a state-action requirement, state action is a necessary component of a Section 1983 claim.[66] Here, the Amended Complaint alleges a Section 1983 claim based upon the First, Fourth, and Fourteenth Amendments, as well as under the FDCPA.[67] Each constitutional claim involves a state-action requirement.[68] That being said, there are certain limited circumstances in which a private party may be found to have engaged in state action

---

[64] 42 U.S.C. § 1983.
[65] *Compare* Defs.' Mot. 7 *with* Pl.'s Opp'n 7
[66] *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 n.18 (1982) ("First, although we hold that conduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law, it does not follow that all conduct that satisfies the under-color-of-state-law requirement would satisfy the Fourteenth Amendment requirement of state action. . . . Second, although we hold in this case that the under-color-of-state law-requirement does not add anything not already included within the state-action requirement of the Fourteenth Amendment, § 1983 is applicable to other constitutional provisions and statutory provisions that contain no state-action requirement. Where such a federal right is at issue, the statutory concept of action under color of state law would be a distinct element of the case not satisfied implicitly by a finding of a violation of the particular federal right."); *see also* 1 Sheldon H. Nahmod, Civil Rights & Civil Liberties Litig.: The Law of 1983 § 2:4 (Sept. 2023 Update).
[67] *See* Am. Compl. ¶¶ 224, 227–30.
[68] U.S. Const. amend. I ("*Congress* shall make no law . . .abridging the freedom of speech[.]" (emphasis added)); *id.* amend. XIV, § 1 ("*No State* shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall *any State* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (emphases added); *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 ("The text and original meaning of the [First and Fourteenth] Amendments, as well as this Court's longstanding precedents, establish that the Free Speech Clause prohibits only *governmental* abridgment of speech. The Free Speech Clause does not prohibit *private* abridgment of speech."); *United States v. Jacobsen*, 466 U.S. 109, 113 ("This Court has also consistently construed [the Fourth Amendment's] protection as proscribing only governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official.'" (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting))); *Lugar*, 457 U.S. at 936 (detailing the state action requirement with respect to the Fourteenth Amendment).

nonetheless, which primarily arise when a private entity is sufficiently involved with a state actor.[69] But here, the Amended Complaint alleges that the Constable Defendants are not duly appointed constables under Utah law and as such are not state actors.[70] These allegations are not made in the alternative.[71] Under these circumstances, Ms. Campbell has failed to state a Section 1983 claim for her alleged constitutional violations. State action is a necessary component in alleging a claim based on each of the constitutional rights implicated by her Amended Complaint, and she has expressly disavowed any allegation that any of the Defendants were state actors.

However, Ms. Campbell also bases her Section 1983 claim on violation of the FDCPA.[72] This requires a separate analysis, as state action is not an element of a FDCPA claim. Section 1983 expressly permits claims based upon deprivation of rights secured by the laws of the United States.[73] However, violation of a federal statute does not automatically give rise to a Section 1983 claim. Section 1983 speaks in terms of rights; therefore, the court "must first determine

---

[69] *See NCAA v. Tarkanian*, 488 U.S. 179, 192 (1988) ("In the typical case raising a state-action issue, a private party has taken a decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action. This may occur if the State creates the legal framework governing the conduct; if it delegates its authority to the private actor; or sometimes if it knowingly accepts the benefits derived from unconstitutional behavior." (citations omitted)); *see also, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.").
[70] *See* Am. Compl. ¶¶ 9, 31, 41, 56, 58, 74, 147–52.
[71] Likewise, Ms. Campbell's argument in opposition to Defendants' motions is that simply because the Constable Defendants held themselves out as law enforcement officers, they can be held liable under Section 1983; and by extension, NAR and the Law Firm Defendants can be held directly liable for their coordinating with the Constable Defendants. *See* Pl.'s Opp'n 7–9.
[72] *See* Am. Compl. ¶ 224.
[73] 42 U.S.C. § 1983.

13

whether Congress *intended to create a federal right*" in a given statute.[74] This occurs when the text of the statute is "phrased in terms of the persons benefited."[75]

Here, Ms. Campbell makes no argument to suggest that the FDCPA contains a right that may be enforced through Section 1983. And indeed, the substantive provisions of the FDCPA are phrased in terms of conduct on the part of debt collectors, not rights created for the debtor.[76] For example: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."[77] Or: "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice" containing certain items.[78] Nothing in the text of any of the substantive provisions of the FDCPA speaks in terms of "rights" possessed by debtors.[79] Likewise, Congress's statement of purpose speaks in terms of which actions Congress sought to eliminate and promote. Nothing suggests that Congress intended to create a right in debtors.[80]

In sum, Ms. Campbell has not stated a Section 1983 claim. The constitutional provisions she relies upon require state action; she has expressly disavowed that any of the Defendants here are state actors, and even theories permitting certain private entities to be considered state actors require that they act in concert with actual governmental entities or agents. Next, the FDCPA

---

[74] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002); *see also, e.g.*, *Wright v. City of Roanoke Redev. & Housing Auth.*, 479 U.S. 418, 423 (1987); *Golden State Transit Corp. v. City of L.A.*, 493 U.S. 103, 106 (1989); *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 509–10 (1990); *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183–84 (2023).
[75] *Gonzaga*, 536 U.S. at 284.
[76] *See* 15 U.S.C. §§ 1692b–1692j.
[77] *Id.* § 1692e.
[78] *Id.* § 1692g.
[79] *Cf. Talevski*, 599 U.S. at 184–86 (holding that where provisions of the Federal Nursing Home Reform Act spoke in terms of rights created, it was presumptively enforceable through Section 1983).
[80] *See* 15 U.S.C. § 1692.

14

does not create a right, privilege, or immunity on the part of debtors, and therefore cannot be enforced through Section 1983. Because Plaintiff clearly has not stated a Section 1983 claim, the court does not consider the remaining arguments urged by Defendants related to Section 1983.

### III. The FDCPA

Because the court has dismissed both Ms. Campbell's fraud claim and Section 1983 claim, all that is left is Ms. Campbell's FDCPA claim. None of the Defendants argues that the Amended Complaint does not allege facts to suggest that the Constable Defendants violated the FDCPA. Instead, NAR and the Law Firm Defendants argue that they cannot be held liable for any of the acts of Constable Defendants.[81]

Because the FDCPA is a federal statute, the court applies general principles of liability as opposed to Utah law.[82] Generally, a principal may be held either directly or vicariously liable for the torts of their agent.[83] An agency relationship arises when both the principal and agent manifest that the agent will act on behalf of the principal and be subject to the principal's control.[84] A principal may be held directly liable for the torts of an agent when the principal directs or ratifies the agent's conduct.[85] Likewise, a principal may be held vicariously liable for the torts of employee-style agents committed while within the scope of the agency relationship.[86]

---

[81] Defs.' Mot. 11–17.
[82] *See McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1096–97 (9th Cir. 2020); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) (citing the Restatement (Second) of Agency § 1 (Am. L. Inst. 1958)); *see also Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404–06 (3d Cir. 2000), *abrogated on other grounds, as recognized in Tepper v. Amos Fin., LLC*, 898 F.3d 364 (3d Cir. 2018); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996); *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) ("[T]he FDCPA has utilized the principle of vicarious liability.").
[83] *See* Restatement (Third) of Agency § 7.03 (Am. L. Inst. 2006); *see also id.* §§ 2.04.
[84] *Id.* § 101.
[85] Rest. 3d Agency § 7.03(1)(a); *see also id.* §§ 7.04, 7.07.
[86] Rest. 3d Agency § 7.03(2)(a).

15

First, NAR and the Law Firm Defendants argue that constables are agents of Utah and therefore cannot be NAR's or the Law Firm's agents.[87] Duly appointed constables are officers of the State of Utah. Among other things, they are appointed for a six-year term, perform public functions, must be certified as a special function peace officer, and must wear a specific uniform while on duty.[88] This court has reached this conclusion several times.[89] But Defendants cite no law and make no argument to suggest that a constable may not be an agent of both the government and a private party simultaneously.[90] Indeed, in order for such an argument to succeed, the court concludes that, at the very least, the Constable Defendants must be duly appointed constables under Utah law and must have been acting pursuant to their official duties when they took the actions complained of in this case. Here, the Amended Complaint contains multiple allegations that the Constable Defendants were not in fact duly appointed constables and were not acting pursuant to any purported official duties.[91] As discussed above, some of the actions alleged in the Amended Complaint are not within the scope of authority authorized for constables executing a writ of execution.[92] Therefore, this argument lacks merit.

Second, Olson Associates suggest that it was not in a employment-style relationship with the Constable Defendants.[93] An employment-style agency relationship exists when the employer

---

[87] Defs.' Mot. 13–15.
[88] Utah Code §§ 17-25a-2, 17-25-1, 17-25a-3(1)(a), 17-25-6.
[89] *See Peretto*, 2024 WL 555140, at *3; *Sexton v. Poulsen & Skousen P.C.*, 372 F.Supp.3d 1307, 1316 (D. Utah 2019); *Reusch v. Purple Shovel, LLC*, No. 4:18-cv-00028, 2021 WL 1200368, at *5 (D. Utah Mar. 30, 2021).
[90] *Cf.* Rest. 3d Agency §§ 3.14, 3.16; *see also* Rest. 2d Agency § 226. On reply, Defendants cite to a bill that went into effect after the events alleged in the Amended Complaint, which provides that "a constable may not serve as an agent, or be deemed to be serving as an agent, for [any person other than the government]." *See* Defs.' Reply 6; H.B. 300, § 23 (Utah Mar. 13, 2024) (amending Utah Code § 17-25-1) (effective July 1, 2024). Defendants do not suggest that that bill has a retroactive effect. Accordingly, it has no effect on the court's analysis.
[91] Am. Compl. ¶¶ 9, 31, 41, 56, 58, 74, 147–52.
[92] *See supra* pp. 4–8.
[93] Defs.' Mot. 14, 15.

16

employs the employee to perform certain services and exercises a high degree of control over how the person performs those services.[94] This analysis typically requires application of a number of non-exclusive factors, including the extent of control, whether or not the person is engaged in a distinct business, the length of time for which the person is employed, the method of payment, whether or not the work is part of a regular business, and others.[95] Here, the Amended Complaint alleges that, "[u]on information and belief," Olson Associates "reviewed and approved each of the collection letters and notices the constables sent to" Ms. Campbell.[96] Likewise, the Amended Complaint contains conclusory allegations that Olson Associates "maintained direct supervisory authority over all of the constables' collection efforts."[97] And it alleges that all the Defendants had "an ongoing business relationship."[98] That the Constable Defendants operate under a separate business entity[99] does not outweigh the alleged facts that speak to the other factors.

Defendants suggest that the Amended Complaint must allege specific facts in order to state a claim against them for violation of the FDCPA.[100] Not so. General allegations based upon information and belief are permissible,[101] and greater specificity is required only when a higher pleading standard is mandated.[102] Accordingly, the court concludes that the Amended Complaint allows it to draw the reasonable inference that Olson Associates is vicariously liable for the

---

[94] Rest. 3d Agency § 7.07(3)(a) ('[A]n employee is an agent whose principal controls or has the right to control the manner and means of the agent's performance of work[.]"); see also Rest. 2d Agency § 220(1).
[95] Id. § 220(2).
[96] Am. Compl. ¶ 29; see also id. ¶¶ 46, 70.
[97] Id. ¶ 68; see also id. ¶¶ 69, 71, 84.
[98] Id. ¶ 72; see also id. ¶¶ 82 – 83.
[99] See id. ¶ 10.
[100] Defs.' Mot. 14, 15.
[101] See 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (4th ed. June 2024 Update).
[102] See, e.g., Fed. R. Civ. P. 9(b); 15 U.S.C. § 78u-4(b)(1).

alleged misconduct of the Constable Defendants. In any event, as Defendants recognize, the Amended Complaint also includes allegations that suffice to establish apparent authority based on the alleged phone call with someone at Olson Associates, which would permit Olson Associates to be held directly liable for the Constable Defendants' actions.[103] Accordingly, Ms. Campbell's FDCPA claim is not dismissed with respect to Olson Associates.

Third, Defendants argue that Mr. Shaner cannot be held liable for the acts of the Constable Defendants because the Amended Complaint alleges that the Law Firm hired the constables.[104] Ms. Campbell argues that Mr. Shaner himself was in a master-servant relationship with the Constable Defendants.[105] Put another way, Ms. Campbell suggests that the Constable Defendants had two principals: the Law Firm and its managing partner. However, the allegations of the Amended Complaint suggest that the Constable Defendants manifested assent to act on behalf of the Law Firm and NAR, not on behalf of any individual working for the Law Firm.[106] It is immaterial whether Mr. Shaner himself decided on behalf of the law firm to hire the Constable Defendants,[107] or whether Mr. Shaner himself was the Constable Defendants' point of contact at the Law Firm.[108] Ms. Campbell points to no theory under which one agent acting on behalf of a principal in supervising another agent can be held vicariously liable for the acts of the second agent.[109] Nor does she point to any theory or authority that would establish direct liability

---

[103] *See* Defs.' Mot. 15–16.
[104] Defs.' Mot. 16.
[105] Pl.'s Opp'n 24.
[106] *See, e.g.*, Am. Compl. ¶¶ 28, 30, 40, 43, 65.
[107] *Cf. id.* ¶ 26.
[108] *Cf. id.* ¶¶ 29, 68, 70, 71.
[109] Mr. Shaner's relationship with Olson Associates and the Constable Defendants does not implicate the issue of vicarious liability for a subagent, as Mr. Shaner did not consent to perform the tasks undertaken by the Constable Defendants on behalf of Olson Associates. *Cf.* Rest. 3d Agency § 3.15(1).

18

for Mr. Shaner himself, rather than the law firm he served. Accordingly, the FDCPA claim against Mr. Shaner is dismissed.

Finally, Defendants argue that NAR cannot be held liable for the acts of the Constable Defendants because the Amended Complaint alleges that the Law Firm, not NAR, hired the Constable Defendants.[110] The Amended Complaint alleges that NAR hired the Law Firm to collect the alleged debt on its behalf and, in turn, the Law Firm hired Constables to collect the debt after it obtained a judgment on behalf of NAR.[111] General principles of agency law permit a principal to be held liable for the torts of an agent's subagent.[112] Accordingly, this argument lacks merit.

In sum, the Amended Complaint alleges sufficient facts to suggest that NAR and Olson Associates may be held either directly or vicariously liable for the acts of the Constable Defendants taken in violation of the FDCPA. However, Ms. Campbell does not allege facts or raise any legal theory under which Mr. Shaner could be held liable for the acts of the Constable Defendants, who were alleged to be serving NAR and Olson Associates.

## ORDER

For the forgoing reasons, the court DENIES Defendants' motion to certify[113] and GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss.[114] Ms. Campbell's fraud and Section 1983 claims are dismissed without prejudice, as is her claim against Mr.

---

[110] Defs.' Mot. 17.
[111] *See* Am. Compl. ¶¶ 21, 25, 30.
[112] *See* Rest. 3d Agency § 3.15; *id.* cmt. d.
[113] ECF No. 18.
[114] ECF Nos. 13, 14.

Shaner under the FDCPA. However, her FDCPA claims against Olson Associates, Mr. Kolkman, Constable Kolkman LLC, and NAR remain.

Signed July 23, 2024.

BY THE COURT

David Barlow
United States District Judge